UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| TRAVIS L. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-cv-00143-RLY-MPB |
| ) | |
| ANDREW M. SAUL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 21). Plaintiff Travis J.[1] seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits (DIB). The matter is fully briefed. (Docket No. 9; Docket No. 19; Docket No. 20). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Travis J. is not disabled.

**Introduction**

Plaintiff, Travis J., protectively filed his application for Title II on October 24, 2017, for disability insurance benefits, alleging disability beginning on December 31, 2014. (Docket No. 7-2 at ECF p. 13). His claim was denied initially and upon reconsideration. (Docket No. 7-2 at

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

ECF p. 13; Docket No. 7-4 at ECF p. 2; Docket No. 7-4 at ECF p. 7). Administrative Law Judge (ALJ) Jeffrey L. Eastham held a hearing on April 19, 2018, at which Travis J., represented by counsel, and a vocational expert (VE) James Bordieri, appeared and testified. (Docket No. 7-2 at ECF p. 13).

After the hearing, on May 14, 2018, the ALJ issued an unfavorable decision. (Docket No. 7-2 at ECF pp. 13–24). On July 10, 2018, the Appeals Council denied review, thereby rendering it the agency's final decision for purposes of judicial review. (Docket No. 7-2 at ECF p. 2). On August 15, 2018, Travis J. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Deputy Commissioner denying him benefits.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then he is not disabled. A severe impairment is one that

"significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listings includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similarly listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC. If so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399–400 (1971). Accordingly, the Court may not reevaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

**I.   The ALJ's Sequential Findings**

Plaintiff met the insured status requirements of the Social Security Act through June 30, 2021. (Docket No. 7-2 at ECF p. 15). He had not engaged in substantial gainful activity since December 31, 2014, the alleged onset date through the date of the decision. (*Id.*).

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Travis J. was not disabled. (Docket No. 7-2 at ECF p.

4

24). At step one, the ALJ found that Travis J. had not engaged in substantial gainful activity.[2] (Docket No. 7-2 at ECF p. 15). At step two, the ALJ found that Travis J. had the following severe impairments: "[C]hondromalacia patellae of the right knee, tinnitus, insomnia, posttraumatic stress disorder (PTSD), depression, and anxiety." (Docket No. 7-2 at ECF p. 16). At step three, the ALJ found that Travis J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically considering Listings 1.02, 2.00, 12.04, 12.06, and 12.15. (Docket No. 7-2 at ECF pp. 16–18). After step three, but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can climb ramps and stairs occasionally, but never ladder, ropes, or scaffolds, and he can occasionally balance, stoop, kneel, crouch, and crawl. He can tolerate moderate noise. He can perform simple tasks, but not at a production rate pace; he can follow simple instructions and make simple decisions; he can tolerate frequent contact with supervisors, but only occasional contact with coworkers and the public; and his work needs to be more task/object oriented than service oriented.

(Docket No. 7-2 at ECF p. 18).

At step four, the ALJ concluded that the claimant is unable to perform any past relevant work. (Docket No. 7-2 at ECF p. 23). At step five, the ALJ concluded that the Plaintiff was twenty-eight years old, or a younger individual, on the alleged disability onset date. (*Id.*). The ALJ concluded that Travis B. has at least a high school education and is able to communicate in English. (*Id.*). The ALJ then found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether a profit is realized). 20 C.F.R. § 404.1572(a).

Plaintiff's age, education, work experience, and RFC, the ALJ concluded he would still be able to perform the jobs of Housekeeping/cleaning, landscape laborer, and inspector. (Docket No. 7-2 at ECF p. 24).

II. **Review of Plaintiff's Assertions of Error**

    A. **State Examiner's Opinion**

Travis J. asserts that the ALJ committed several errors, which he believes resulted in a faulty Step 3 analysis. The undersigned will address Travis J.'s broader Step 3 arguments, as well as his arguments related to the ALJ's credibility determination later, but the analysis first turns to the ALJ's handling of the state examiner's, Dr. Klug, opinion—which the undersigned finds requires remand (Docket No. 9 at ECF pp. 8–9).

Travis B. argues that the ALJ erred in ignoring the state examiner's opinion. (Docket No. 9 at ECF pp. 8–9). The Commissioner concedes that the ALJ erred, but argues such error was harmless because the state examiner's report supports the ALJ's determination. (Docket No. 19 at ECF pp. 15–16).

After Travis J. applied for disability benefits, Dr. Fred Klug, a psychologist, examined him on behalf of the Social Security Administration. *See* 20 C.F.R. § 404.1519 (establishing such consultative examinations for applications seeking disability insurance benefits). Dr. Klug's summary included:

> Attentional span was poor, but concentration was good. Immediate memory was impaired. Short-term memory was poor with retrieval deficits. Long-term memory was intact.
>
> Fund of knowledge was restricted. Reasoning was poor. Ability to do simple calculations was good. Abstract thinking was poor. Insight and judgment were poor. Intellectual functioning appeared to be low-average.
>
> . . .

6

> Visual and olfactory perceptual disturbances were reported. Auditory and tactile hallucinations were not evident. Thought processes were goal-directed and relevant. Production was concrete. Delusions and obsessions were denied. Worries, ruminations, and compulsiveness were reported.
>
> Affect was appropriate and consistent with his thought content. Predominant mood was dysphoric and nervous.
>
> It is my opinion that he could participate in the management of his own funds.

(Docket No. 7-36 at ECF pp. 40–41).

The regulations provide that an ALJ will evaluate every medical opinion he receives, regardless of its source. 20 C.F.R. § 404.1527(c). Medical opinions, for purposes of the regulations, "are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The ALJ makes only one reference to Dr. Klug's report, noting that on May 20, 2016, Travis J. reported that he was taking Prazosin, sertraline, Lunesta, and Clonazepam. (Docket No. 7-2 at ECF p. 22). While the Commissioner concedes that the ALJ erred (Docket No. 19 at ECF p. 15) ("[T]he ALJ's error in not assigning weight to Dr. Klug's opinion . . ."), he also argues that the only opinion Dr. Klug provided was that Plaintiff "could participate in the management of his own funds" and, since this limited opinion is not contradicted by the ALJ's RFC, such error was harmless. (*Id.*). *See Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) ("Given that Dr. Lloyd failed to venture an opinion as to the extent of Books's limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best."); *see also Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("But this kind of error is subject to harmless-error

review, and we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same.") (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)).

While the Commissioner argues the ALJ's error was harmless because Dr. Klug's only opinion was related to Plaintiff's ability to manage finances, Plaintiff cites error for failing to mention the above-cited section of Dr. Klug's report—which includes a more through discussion of Plaintiff's mental impairments. Neither side provides any explanation as to why the other portions of Dr. Klug's report do or do not constitute "medical opinions," consistent with the regulations.

It is clear that Dr. Klug is an "acceptable medical source." 20 C.F.R. § 404.1527(a)(1). Thus, the question is whether the statements in his summary "reflect judgments about the nature and severity of [the claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* While the undersigned notes that Dr. Klug only explicitly stated it was "his opinion" before the final sentence of the summary section, it is evident that the other portions do reflect Dr. Klug's judgments about the nature and severity of Travis J.'s impairments. This summation was given after a multi-page report of how Travis J. performed on several different tests to examine, among other things, his attentional span, his immediate memory, reasoning, and judgment and insight. (Docket No. 7-36 at ECF pp. 37–40). In the summary section, Dr. Klug made judgments (based on those assessments) concerning Travis J.'s current ability to perform in those areas. On its face this satisfies the regulation's definition of "medical opinion" and the Commissioner, who has the burden in establishing harmless error, has not provided reasoning otherwise. It is possible that the ALJ considered these opinions and found that they supported the RFC, but it is also

8

possible that the ALJ did not. Given that the regulations require the ALJ to evaluate every medical opinion and the ALJ's decision is devoid of any meaningful discussion of Dr. Klug's report, remand is necessary. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that attempt to establish that an ALJ "*might* have reached the same result had she considered all the evidence" violates *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

### B. Listing Analysis

Given remand is recommended, the undersigned will offer a brief discussion of the other issues raised by Plaintiff as guidance on remand. Travis J. argues that the ALJ inaccurately evaluated his mental functioning abilities and therefore failed to apply the paragraph B criteria required to meet Impairment Listing 12.04, 12.06, or 12.15 correctly. (Docket No. 9 at ECF p. 4). Specifically, Travis J. argues the ALJ erred in finding that he had only "mild" limitation in understanding, remembering or applying information (Docket No. 9 at ECF pp. 6–9); in finding that he had only "moderate" limitation in concentrating, persisting, or maintaining pace (Docket No. 9 at ECF pp. 9–10); and in finding that he had only "mild" limitation in adapting and managing himself (Docket No. 9 at ECF pp. 10–12). Travis J. argues that the ALJ committed several errors in making these findings that, if not made, would have resulted in a finding of "marked" limitation in each of these three areas.[3] Thus, he concludes the ALJ's finding that his Post-Traumatic Stress Disorder did not meet Impairment Listing 12.15 was erroneous and, even

---

[3] With regards to the paragraph B criteria, the regulations provide for a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In relevant part the regulations define mild limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is *slightly* limited;" moderate limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is *fair*;" and marked limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously* limited." *Id.* (emphases added).

9

if not, the combination of his PTSD, Major Depressive Disorder, and Generalized Anxiety Disorder should have resulted in an impairment that is medically equal to each of the listings. (Docket No. 9 at ECF p. 12).

Under a theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Here, the ALJ considered listings 1.02, 2.00, 12.04, 12.06, and 12.15, and found that Travis J.'s impairments were not severe enough to meet or medically equal any one of the listings, either singly or in combination. (Docket No. 7-2 at ECF p. 16). To meet Impairment Listing 12.04, 12.06, or 12.15, a person's impairments must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C (Impairment Listing 12.00(A)(2)). To satisfy the paragraph B criteria, a person's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning (Impairment Listing 12.00(A)(2)(b)).

Travis J. dedicates a large portion of his Step 3 argument to the proposition that the ALJ "cherry-picked" records and ignored or discounted records that should have resulted in "marked" findings instead of "mild" or "moderate." However, even if the undersigned concludes that the ALJ "cherry-picked" records, Plaintiff has set forth no explanation as to why the evidence he cites should result in "marked" limitations other than the evidence clearly rises to the level of "marked." It is Travis J.'s burden to show that his conditions met or equaled the listed impairment. *Steward v. Bowen*, 858 F.2d 1295, 1297 n. 2 (7th Cir. 1998). Moreover, Travis J.'s

10

arguments in this section rely almost exclusively on subjective reports. While an ALJ is required to consider a Plaintiff's subjective allegations, they are insufficient on their own to establish medical severity. *See* 20 C.F.R. § 404.1529 (subjective statements about pain or other symptoms alone will not support a finding of disability). Nevertheless, on remand the ALJ may find that the Step 3 analysis should be revisited based on his review of Dr. Klug's report.

### C. RFC Analysis

Plaintiff's argument that his mental functioning limitations will result in an excessive amount of off-task behavior (at least 15% of the workday)—which the vocational expert testified would prohibit him from engaging in substantial gainful employment—solely relies on a cite from his counsel's hypothetical to the VE. (Docket No. 7-2 at ECF p. 65). A hypothetical posed by counsel at an administrative hearing is insufficient to meet Plaintiff's burden to prove the severity of his impairments. *See* 20 C.F.R. § 404.1512(a), (c); *Scheck v. Barnhart*, 357 F.3d 697, 701–02 (7th Cir. 2002).

With regards to Plaintiff's arguments related to his right knee, the undersigned makes no specific finding (given remand is recommended on earlier issue) but notes that a diagnosis is not sufficient to prove functional limitations from an impairment. *See Collins v. Barnhart*, 114 F. App'x 229, 234 (7th Cir. 2004) ("[T]he existence of these conditions alone does not prove that the conditions so functionally limited [claimant] as to render[] her completely disabled during the relevant period.").

### D. Credibility Determination

Travis J. makes several arguments related to the ALJ's credibility determination. Given remand, it is unnecessary to determine whether the ALJ's credibility determination is patently erroneous, but some direction is given for the ALJ on remand.

The regulations set forth a two-step process for evaluating a claimant's "symptoms," that is, the claimant's own statements about her impairments. *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling 16-3p. The ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity for work." 20 C.F.R. § 404.1529(c). An ALJ's symptom evaluation is entitled to substantial deference and should be affirmed unless it is "patently wrong," *Powers v. Apfel*, 207 F.3d 431, 435–36 (7th Cir. 2000), meaning that it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

The ALJ discussed Travis J.'s medication regimen several times, noting that Travis J. "generally did not take medication because he did not like the way they made him feel (Exhibit 8F-87);" that Travis J. "was still not taking medication [in October 2016] and reported that he was bored easily (Exhibit 8F-81);" that Travis J. "was reluctant to take medications routinely (Exhibit 4F-25);" and that Travis J.'s "treatment record indicat[ed] that he declined and ceased medications on several occasions (Exhibit 3F), and indicated he did not want to take medications, his reports are not consistent with the records." (Docket No. 7-2 at ECF p. 22). The record, as summarized in Travis J.'s brief, cites numerous occasions where Travis J. reports noncompliance with medication regimen due to his experience with undesirable side effects. The regulations require the Agency to consider whether the Plaintiff had good reasons for his noncompliance, including because the side effects of the medications are less tolerable than the symptoms. SSR 16-3p.

Similarly, the ALJ discussed Travis J.'s lack of counseling treatment for his PTSD. (Docket No. 7-2 at ECF p. 22). While some of that discussion appears to be related to earlier periods, including September 2015 through July 18, 2016, other portions of the ALJ's discussion includes later dates up to the time of the hearing. However, Travis J. testified that his therapy sessions had stopped in the fall 2017 because his counselor—who was provided by the Veterans' Administration—had left the center and the VA was in the process of hiring more counselors. (Docket No. 9 at ECF p. 6). On remand, the ALJ should consider whether there were good reasons for Travis J.'s lack of treatment in accordance with the guidance set forth in the Rulings.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the Court **REMAND** the ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 16th day of August, 2019.

_Matthew P. Brookman_
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.